IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY W. BAILEY, also known as, COCHIE LEE BAILEY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-11-359-SPS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) ) |
| Defendant. | ) |

# OPINION AND ORDER

The claimant Billy W. Bailey, also known as Cochie Lee Bailey, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 14, 1957, and was approximately sixty-three years old at the time of the most recent administrative hearing. (Tr. 90, 563). He has a high school education, and has worked as a sawmill worker and forklift operator. (Tr. 101, 428). The claimant alleges that he has been unable to work since September 2, 2005, due to shoulder and joint problems. (Tr. 95, 415).

## Procedural History

On September 7, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 1, 2008. (Tr. 25-35). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-09-281-FHS-KEW and remanded the case for further proceedings. (Tr. 433-452). During the pendency of this case, the claimant filed another application for disability on August 4, 2008, and was found disabled beginning May 2, 2008. ALJ Kirkpatrick then held another administrative hearing and determined that the claimant was not disabled between September 2, 2005 and May 2, 2008 in a written opinion dated July 18, 2011. (Tr. 413-430). The Appeals Council again denied review, so ALJ Kirkpatrick's July

2011 opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, he could lift/carry ten pounds frequently, and stand/walk two hours and sit six hours in an eight-hour workday, and could only occasionally reach overhead due to his shoulder impairment. The ALJ imposed the additional limitations of performing simple, routine, unskilled tasks and detailed semiskilled tasks, but not complex, skilled tasks. (Tr. 413). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled prior to May 2, 2008, because there was work he could perform in the regional and national economies, *e. g.*, advertising material distributor, laundry worker, and small products assembler. (Tr. 429).

## Review

The claimant's sole contention of error is that the ALJ failed to properly apply Soc. Sec. Rul. 83-20 in determining his onset date. The Court agrees, and the decision of the Commissioner must therefore be reversed.

The record reveals that the claimant had the severe impairments of arthritic changes of the acromioclavicular joints, status post-operative left subacromial decompression and distal clavicle excision; bilateral plantar fasciitis, SP open plantar fascia release with first branch decompression of the left heel; and affective mood disorder. (Tr. 415). The relevant medical evidence as to his physical impairments

reveals that the claimant was treated for urinary tract infections and renal failure on numerous occasions between 2006 and 2007. (Tr. 289). Additionally, he complained of chest pain and was treated for hypertension on several occasions, and even reported a possible heart attack to a consultative examiner in 2005. (Tr. 195, 200, 288, 289). He was prescribed a CPAP machine in late 2005, for his sleep apnea and trouble sleeping. (Tr. 216, 229-243, 291). In February 2006, he had surgery on his left heel for plantar fasciitis. (Tr. 253).

At the first administrative hearing, the claimant testified that he had surgery on his left shoulder in 2004, and that he needed it for his right shoulder but that his insurance had run out. (Tr. 362). He stated that his shoulder problems limited him to lifting weights of less than twenty pounds. (Tr. 363). Additionally, he stated that he had limited vision in his right eye, as well as sleep apnea for which he uses a breathing machine. (Tr. 364-365). He also stated that he had surgery on his left foot (for plantar fasciitis), and needed it for his right foot but did not have insurance coverage and could not afford it. (Tr. 366). He stated that he was drawing unemployment from his last job because they had told him to apply for it, and that he was also taking a class for two hours a day as part of that. He testified that he struggled to stay awake even during that time frame. (Tr. 360-362, 365). When the ALJ challenged the claimant by stating that unemployment benefits required an individual to certify that they could work, the claimant stated that he obtained those benefits to provide for his family. (Tr. 361). The claimant further testified that he had kidney problems, which caused him to have to urinate frequently. (Tr. 369). At the second administrative hearing, the claimant again testified as to his

shoulder problems and foot problems. (Tr. 564-565). He further testified that he experienced shortness of breath that began sometime in 2005, as well as back problems. (Tr. 565-568). He testified that he received a parking tag for the disabled in 2007, after he was diagnosed with a joint disease, and that he began experiencing mental problems in 2006. (Tr. 569). He against testified as to his kidney problems, that he began having urinary tract infections in 2005 that became worse in 2007, and that he also began to experience high blood pressure. (Tr. 573-574).

In his written opinion, the ALJ summarized the claimant's testimony and medical records. He found that the claimant was not disabled within the relevant time frame, but made no reference or analysis as to an onset date with regard to slowly progressive impairments. (Tr. 417-428).

"With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . In such cases, it [is] necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2. "[T]he [ALJ] should call on the services of a medical advisor when onset must be inferred." *Id.* at *3. "[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea v. Barnhart*, 466 F.3d 903, 912 (10th Cir. 2006). *See also Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.");

*Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor."). An ambiguity in the evidence is only an issue if it involves the possibility that the onset date was prior to the expiration of insured status. *See Hill v. Astrue*, 289 Fed. Appx. 289, 294 (10th Cir. 2008) ("Expert testimony is helpful where the ALJ has determined that the claimant eventually became disabled but there is some ambiguity about whether the onset of this disability occurred prior to the expiration of the claimant's insured status."), *citing Blea*, 466 F.3d at 913.

The claimant alleged an onset of disability on September 2, 2005, and his insured status expires on March 31, 2013. (Tr. 119-24). Claimant was not found to be disabled until May 2, 2008, following his subsequent application for benefits. (Tr. 413). In reaching his decision, the ALJ made no mention of Soc. Sec. Rul 83-20 in his analysis of the evidence. The Commissioner argues that the ALJ was not required to seek the assistance of a medical advisor under Soc. Sec. Rul. 83-20 because the medical evidence in this case was not ambiguous. But the ALJ's complete disregard for this guideline lends credence to the presence of ambiguities, especially in light of the fact that the Appeals Council specifically recommended on remand that the ALJ consider obtaining testimony of a medical expert to address the issue of onset prior to May 2, 2008. (Tr. 435). *See Blea*, 466 F.3d at 912-13 ("Mr. Blea's medical record is indisputably incomplete during a pertinent time period, June to December 1998. But, rather than call[ing] on the services of a medical advisor when onset must be inferred, the ALJ made negative inferences against Mr. Blea due to the gap in the medical record. An ALJ may

not make negative inferences from an ambiguous record; rather, [he] must call a medical advisor pursuant to [Soc. Sec. Ruling] 83-20."), *citing* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3 and *Reid*, 71 F.3d at 374. The medical evidence suggests that the claimant's conditions may have worsened between 2005 and 2008, particularly with regard to his kidney problems and heart condition. "[W]ith respect to the onset date of a disability, . . . an ALJ 'may not make negative inferences from an ambiguous record; rather, it must call a medical advisor pursuant to SSR 83-20." *Bigpond v. Astrue*, 280 Fed. Appx. 716, 717-18 (10th Cir. 2008) ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions.'"), *quoting Blea*, 466 F.3d at 912-13. Thus, the ALJ should have called upon a medical advisor to infer the onset of the claimant's disability. *See Blea*, 466 F.3d at 912 ("[T]he issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions."). *See also Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

Because the ALJ should have consulted a medical advisor pursuant to Soc. Sec. Rul. 83-20, the decision of the Commissioner must be reversed and the case remanded to the ALJ for compliance with Soc. Sec. Rul. 83-20. On remand, the ALJ should call a

medical advisor regarding the claimant's onset of disability, then re-determine when the claimant became disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 12th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma